## MARY H. WILKS, Respondent, v. CITY OF CARUTHERSVILLE, Appellant.

St. Louis Court of Appeals, January 9, 1912.

1. **MUNICIPAL CORPORATIONS**: Torts of Officers and Agents: Liability of Municipality: Animals: Negligence in Keeping Pound. A city is liable, under the doctrine of *respondeat superior,* for the torts of its officers and agents, committed while exercising its powers of a private or proprietory nature, but

Wilks v. Caruthersville.

it is not liable for their torts in exercising powers conferred upon it exclusively for the public goods, since, in exercising such powers, they are not the officers and agents of the municipality, but of the state at large; and, as the restraining of animals from running at large by a city pound-keeper conserves the public good, by removing from the streets what might otherwise become a nuisance, the city is not liable, under the doctrine of *respondeat superior*, for a negligent act of the pound-keeper, causing the death of an animal taken up by him.

2. ————: **Cities of Fourth Class: Restraining Animals: Police Power.** The authority conferred upon cities of the fourth class by section 9374, Revised Statutes 1909, to prohibit animals from running at large within their limits and to impound any such animals, is referable to the police power.

3. ————: **Police Power.** Ordinances passed and regulations established by a city by virtue of the police power, and the acts of its officers and agents thereunder, are not for the interest of the city in its corporate capacity, but for the interest of the public at large.

4. ————: **Restraining Animals: Negligent Construction of Pound.** Where a city so defectively constructs a pound in which to keep impounded animals as to cause injury to an animal placed therein, it is liable for such injury, as in other cases of negligent construction.

5. ————: ————: ————: **Proximate Cause.** In an action against a city for the death of a horse taken up by the city pound-keeper, the city cannot be held liable on the ground of negligence in failing to provide a proper pound, where the death of the horse was not caused by placing it in the pound, but occurred by reason of its becoming frightened, while temporarily tied near the pound, and breaking loose and running away, receiving injuries that caused its death, since there was no causal connection between the failure to furnish a proper pound and the death of the horse.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

*Reeves & Hawkins* for appellant.

(1) A city is only liable for negligence in the exercise of powers conferred for its private corporate advantage; but is not liable for the negligence of its

officers when engaged in enforcing the police regulations of the city, because their duties are in the interests of civil government and of the public, and are not for this reason regarded as mere officers of the town in its corporate capacity. Murtaugh v. City, 44 Mo. 479; Heller v. Sedalia, 53 Mo. 159; Armstrong v. Brunswick, 79 Mo. 319; Keating v. City, 84 Mo. 415; Worley v. Columbia, 88 Mo. 106; Brown v. Cape Girardeau, 90 Mo. 377; Ulrich v. St. Louis, 112 Mo. 138; Barree v. Cape Girardeau, 197 Mo. 382; McKenna v. St. Louis, 6 Mo. App. 320; Whitefield v. Carrollton, 50 Mo. App. 98; Bullmaster v. St. Joseph, 70 Mo. App. 60; McVey v. Barker, 88 Mo. App. 515; Quinn v. Schneider, 118 Mo. App. 39; Culver v. Streator, 6 L. R. A. (Ill.) 270; Curran v. Boston, 8 L. R. A. (Mass.) 243; Brown v. Guyandotte, 11 L. R. A. (W. Va.) 121; Howard v. Worcester, 12 L. R. A. (Mass.) 160; Dodge v. Granger, 15 L. R. A. (R. I.) 781; Whitefield v. Paris, 15 L. R. A. (Tex.) 783; Snider v. St. Paul, 18 L. R. A. (Minn.) 151; Bartlett v. Clarksburg, 43 L. R. A. (W. Va.) 925; McIllhenny v. Wilmington, 50 L. R. A. (N. C.) 470; Gray v. Griffin, 51 L. R. A. (111 Ga. 361) 131; Peterson v. Wilmington, 56 L. R. A. 959; Colwell v. Waterbury, 57 L. R. A. (Conn.) 218; Simpson v. Whatcom, 63 L. R. A. (Wash.) 815; Twyman v. Frankfort, 64 L. R. A. (Ky.) 572. (2) The enactment of the ordinance referred to in the petition was an exercise by the city of its police power. Its purpose was to better secure the safety, health and welfare of the public. The city pound-keeper, in taking up the horse, therefore, occupied the attitude of a policeman engaged in the enforcement of an ordinance of the city; and in such case, the maxim, *respondeat superior,* does not apply, and the city is not liable for his negligent acts. Whitefield v. Paris, 15 L. R. A. (Tex.) 783; Culver v. Streator, 6 L. R. A. (Ill.) 270.

*Alex Z. Patterson* and *Arthur L. Oliver* for respondent.

(1) A city is liable for the negligent acts or omissions of its agents in impounding animals or in failing to provide a proper pound. City of Greencastle v. Martin, 74 Ind. 449; Murgs v. Coggswell, 1 E. D. Smith 359. (2) Appellant contends that the private lot of J. C. Lonon, the pound-keeper, had been selected by him under authority of the ordinance, heretofore mentioned, as the permanent pound or pen in which to place impounded animals. If this contention be correct, he, as such pound-keeper, held such property for the city, and the city in its private character as the owner of lands, houses or other property is to be regarded in the same light as a private corporation or individual and held liable accordingly. Carrington v. St. Louis, 89 Mo. 209; Whitfield v. Carrollton, 50 Mo. App. 98. Whether the city itself held the lot for this purpose or authorized another to do so would not change the legal phase of the case. (3) The general rule of law that a municipal corporation is not liable for alleged injury to the property of individuals, when engaged in performance of a public duty, has no application here. If the power exercised is not strictly and absolutely a public function, it does not fall under the rule that the municipal corporation is not liable for tortious injury by its servants, agents and servants. The mere fact that the exercise of the function may incidentally benefit the public does not render the work a public function so as to exempt the city. Missani v. New York, 160 N. Y. 123. And if the work or function is undertaken for the pecuniary profit of the city, or is even attended with pecuniary profit, that fact is sufficient to characterize it as a private power, rather than a power wholly beneficial to the public. Philadephia v. Gavignin, 62 Fed. 617; Findley v. Salem, 137 Mass. 171; Augusta v. Lombard, 99 Ga. 282;

Hill v. Boston, 122 Mass. 344; Tormey v. New York, 12 Hun 289. (4) It is a recognized rule of construction that the exemption of municipal corporations from liability for acts in the exercise of governmental powers should be strictly construed. Bennett v. New Orleans, 14 La. Ann. 120; 20 Am. & Eng. Ency., p. 1196.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

Defendant is a city of the fourth class, incorporated and existing under the provisions of the general statutes pertaining thereto. Defendant's ordinance forbids horses and certain other animals from running at large within its corporate limits, provides for a pound-keeper, and directs him to restrain such animals, etc. The suit proceeds against the city on account of the negligence of its pound-keeper with respect to plaintiff's horse while it was in his possession, after being taken upon the public streets. It appears plaintiff's horse was running at large with a rope around its neck in the public streets and defendant's pound-keeper caught it with the purpose of impounding it. After having taken up the horse, the pound-keeper led it to the pound, but before placing it therein tied it to a fence while he removed an empty wagon to a point where the horse might not come in contact therewith. Immediately upon plaintiff's horse being tied to the fence, it became frightened from some cause, reared backward and tore from the fence the board to which it was tied. The record is quite barren of evidence tending to prove what occasioned the fright of the horse but it suggests that water may have been thrown upon its neck by either the pound-keeper or his assistant. When plaintiff's horse reared backward, it tore from the fence a board some five or six feet in length, to which it was tied, and

ran violently through the streets of the city, dragging the board. During the rampage, the horse stepped upon the board and stumbled and fell with such force as to break its neck. According to the proof, the horse was not hitched to the fence for more than a minute before it became frightened and broke away. A few minutes later, after the horse had fallen to its death, a considerable wet spot was found about its head and neck, indicating that water had been thrown upon it. There is proof that the horse was afraid of a hydrant and that a hydrant stood near where the pound-keeper tied it to the fence.

The theory of plaintiff's case and the proof introduced suggest the act of the pound-keeper in so tying the horse to the fence and permitting some one to throw water upon it as a negligent breach of duty with respect to the obligation of defendant to exercise ordinary care for the safety of the animal while in its possession. Indeed, the proof of negligence is very meager and that last stated is all the evidence tends to show.

It is argued the court erred in refusing to direct a verdict for defendant because it is not liable for the negligent acts of its pound-keeper in the circumstances of the case, and we believe the argument to be sound. There are some cases in which the negligent acts and conduct of its officers and agents may cast liability upon the city under the rule *respondeat superior* but this is not one of them. Where the suit proceeds because of an injury inflicted upon another through the negligent act of an officer or agent of the municipality in exercising its powers of a proprietary or private nature as contradistinguished from those of a public character, a recovery may be allowed against the city under the rule *respondeat superior*. Such proprietary powers of a private character, possessed and exercised by the corporation, are those which are conferred for

the private advantage of the municipality, as to construct and maintain sewers, to provide water for the use of the city and its inhabitants, to make and repair streets, to generate and supply light and other like powers for municipal advantage and emolument. For injuries inflicted through the negligence of the city's agents when exercising such powers, the municipality is required to respond. The following cases will illustrate: In Bullmaster v. City of St. Joseph, 70 Mo. App. 60, the plaintiff was injured while working about defendant's electric light plant, and for this a recovery was allowed and affirmed, because, in respect of such matter of a private character, the municipality was declared to be responsible for the negligent acts of its servants. In Barree v. City of Cape Girardeau, 197 Mo. 382, 95 S. W. 330, the plaintiff was injured through the willful assault of the city street commissioner while exercising the functions of his office in supervising the building of the street. Because the injury was so inflicted, the court declared the defendant city liable to respond for the reason it resulted from the exercise of a franchise or power of the city conferred as a private advantage. But though such be the rule in these cases, it is not so where it appears the injury results from the exercise of a power conferred upon the municipality exclusively for the public good. Such, for instance, is that to maintain a city workhouse or hospital, or that to abate, prevent and remove nuisances, or that to establish a fire department, or those relating to the public peace and good order or the suppression of vice and immorality or preserving the public health, caring for the poor or providing for education, or those relating to the general welfare, coupled with judicial or legislative discretion touching the manner or mode of their exercise and the like. Touching these powers, and to the extent that cities exercise them, their duties are regarded as due to the public and not to individuals.

Indeed, as to these it is said the city's agents and officers are not the agents and officers of the corporation but of the greater public, the state at large. Because of this view that, as to such powers, the city itself acts as a mere agent of the state for the public weal, the principle of *respondeat superior* does not obtain. In other words, no liability may be enforced against the city for the negligent conduct of its servants or agents in exercising a franchise which finds its origin in the powers of the character last enumerated. Illustrative of this view is the case of Armstrong v. City of Brunswick, 79 Mo. 319, wherein it is declared the city was not liable for the negligence of its officers in omitting to abate a nuisance which entailed injury upon the plaintiff. So, too, it was declared in Ulrich v. City of St. Louis, 112 Mo. 138, 20 S. W. 466, that no liability obtained against the city on account of the negligence of its officers in requiring a workhouse prisoner to manage a mule, well known by them to be unruly and vicious, whereby he was injured. To the same effect, see Worley v. Columbia, 88 Mo. 106; Murtaugh v. St. Louis, 44 Mo. 479.

From what has been said, and the authorities cited, it is obvious the city is not liable to respond for the negligent acts of its agents or servants in executing any of those powers which are confered upon it for the public good. It cannot be that the act of the pound-keeper in restraining animals from running at large under the ordinance pertains to the mere private powers of the city, for, instead, it conserves the public good, as it removes from the street what might otherwise become a nuisance through impeding the public travel or endangering the safety of those who may occupy the highway. Defendant city is of the fourth class and Sec. 9374, R. S. 1909 confers complete authority upon it to prohibit horses and certain other animals from running at large within its limits, establish a pound, appoint a pound-keeper and take and im-

pound such animals as are found at large therein. That the power to so provide by ordinance and enforce its provisions is parcel of the police power conferred upon the city goes without saying. [See Evans v. Holman, 202 Mo. 284, 296, 100 S. W. 624; City of Greencastle v. Martin, 74 Ind. 449; Dillon, Municipal Corporations (5 Ed.), sec. 301.] That ordinances and regulations made and provided by a city in virtue of the police power and the conduct of its officers or agents thereunder are not for the interests of the city in its corporate capacity alone but instead in the interest of the larger public as the state, is well settled. [See Dillon Municipal Corporations (5 Ed.), sec. 1656; Ulrich v. City of St. Louis, 112 Mo. 138, 143, 144; 20 S. W. 466.] From this it appears that even though the pound-keeper were negligent touching the matter of hitching plaintiff's horse to the fence and causing it to break away and run to its death, he was negligent in respect to a matter about which no liability could be cast upon the city under the rule *respondeat superior*. In other words, while so negligent, he was engaged in performing a franchise incident to a power conferred upon the city for the public good instead of one of a private and proprietary character. In such circumstances, no liability whatever was entailed upon the municipality for his tort.

But though such be true, it is urged that the petition declares, too, upon the negligent omission of the city to provide a proper pound, and it is said if an injury resulted from such cause liability appears. It may be in a proper case that such would be an appropriate rule of decision but certainly not so here, for whether the city had constructed a pound or not, the matter is wholly immaterial. This matter appears to be wholly irrelevant, for it in no manner operated proximately to plaintiff's loss. The fact is, the pound-keeper had set apart a proper lot on his own premises for a pound and this appears to be in accord-

ance with the express provision of the ordinance in that behalf. But be this as it may, plaintiff's horse was not in the pound at the time but only near thereto. The pound-keeper hitched the horse in near proximity to the pound, but not to it, in order to remove a wagon out of the way before impounding the animal, and while hitched to the fence of another inclosure, the horse tore loose and ran away. How the matter of the omission of the city to construct a pound tends to reveal liability in the circumstances here disclosed, we are unable to discern. No one can doubt that had the city constructed a pound so defectively as to occasion an injury to plaintiff's horse through becoming entangled with its fence liability would appear for negligent construction as in other cases. Such, and such *only*, is the principle declared in City of Greencastle v. Martin, 74 Ind. 449, relied upon by plaintiff. But nothing of that character appears here, for the horse had not even entered the pound nor was it tied to it, though it was near thereto at the time it became frightened and broke away. At any rate, this allegation of negligence seems to have been abandoned at the trial, for it was not referred to the jury in plaintiff's instructions. There appears to be no causal connection whatever with the fact alleged that defendant omitted to construct and provide a pound and the injury and loss of plaintiff's horse.

The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.